DANIEL S. LIM (Cal. Bar No. 292406)
Email: limda@sec.gov
ROBERT C. STILLWELL (Cal. Bar No. 308630)
Email: stillwellr@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Katharine E. Zoladz, Regional Director
Gary Y. Leung, Associate Regional Director
Douglas M. Miller, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Securities and Exchange Commission, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Raskob Kambourian Financial Advisors, Ltd., | |
| Defendant. | |

Plaintiff Securities and Exchange Commission ("SEC" or the "Commission") alleges:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to Sections 209(d), 209(e)(1) and 214 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-9(d), 80b-9(e)(1) & 90b-14].

2. Defendant has, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

1

3.   Venue is proper in this district pursuant to Section 214 of the Advisers Act, [15 U.S.C. § 80b-14] because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because Raskob Kambourian Financial Advisors, Ltd. has its principal place of business in this district.

**SUMMARY**

4.   Until October 2023, defendant Raskob Kambourian Financial Advisors, Ltd. ("Raskob Kambourian") was an SEC-registered investment adviser that owed a fiduciary duty to its advisory clients, who paid Raskob Kambourian fees in exchange for the firm's investment advice. This civil enforcement matter concerns Raskob Kambourian's failure to adequately disclose to clients, over a multi-year period, that it was charging financial planning and investment management fees that were higher than what Raskob Kambourian's clients had expressly agreed to pay under the schedules of fees set forth in their advisory agreements. In all, these higher fees exceeded $1.36 million. Raskob Kambourian's persistent and inadequately disclosed overbilling was both negligent and in violation of the firm's fiduciary duties.

5.   Beginning in at least 2018, Raskob Kambourian periodically increased its financial planning and investment management fees. Although Raskob Kambourian disclosed these fee increases in its annual amendments to its Form ADV Part 2A (the "Brochure"), these increases constituted material changes to the Brochure and Raskob Kambourian had an obligation to disclose them in the Brochure's summary of material changes. Raskob Kambourian also had an obligation, at a minimum, to timely deliver any summary of material changes to each of its advisory clients. In 2019, Raskob Kambourian failed to deliver its summary of material changes, and from 2020 to 2021, it failed to both disclose the fee increases in a summary of material changes and deliver any such summary to its clients. And then, in 2022, while it disclosed its past fee increases in its summary of material changes by filing a new amendment to its Brochure, Raskob Kambourian still negligently failed to timely deliver its Brochure or the summary of

material changes to its clients within the allotted period, as it was obligated to do.

6. The requirement that Raskob Kambourian both disclose its fee changes and timely deliver the Brochure or the summary of material changes to its clients mattered. The only monthly account statements that Raskob Kambourian's clients received never explained Raskob Kambourian's charged fees or any changes to them, and instead only included the charges as a single line item.

7. As a result, from May 2019 through July 2022 (the "Relevant Period"), Raskob Kambourian charged its clients a total of about $1,364,513 more in fees than were expressly authorized under the fee schedules set forth in client agreements, and failed to properly disclose the periodic fee increases to its clients.

8. During this time, Raskob Kambourian also negligently failed to keep true, accurate, and current books and records relating to its investment advisory business for a minimum of five years.

9. By this conduct, Raskob Kambourian violated Section 206(2) of the Advisers Act, Section 204(a) of the Advisers Act and Rules 204-2 [17 CFR § 275.204-2] (the "Books and Records Rule"), 204-3 [17 CFR § 275.204-3] (the "Brochure Rule"), and Section 206(4) of the Advisers Act and Rule 206(4)-7 [17 CFR § 275.206(4)-7] thereunder (the "Compliance Rule"). With this complaint, the SEC seeks permanent injunctive relief, disgorgement with prejudgment interest, and civil penalties against Raskob Kambourian.

**DEFENDANT**

10. Defendant Raskob Kambourian is an Arizona corporation with its principal place of business in Tucson, Arizona. It has been registered as an investment adviser with the State of Arizona since October 2023. Raskob Kambourian was registered with the SEC from 1985 until October 2023, when it withdrew its SEC registration. According to Raskob Kambourian's last Form ADV, Raskob Kambourian has 75 clients and approximately $77 million in assets under management.

# THE ALLEGATIONS

**A.    Raskob Kambourian's Failure to Adequately Disclose its Higher Fees**

11. During the Relevant Period, Raskob Kambourian clients who sought financial planning and investment management services signed a "comprehensive financial planning agreement" ("CFPA"), while Raskob Kambourian clients who sought only investment management services signed an "investment management agreement" ("IMA").

12. Under the terms of each agreement, Raskob Kambourian was allowed to charge its CFPA and IMA clients an investment management fee, which was calculated as a percentage of each client's assets under management ("AUM Fee"). Every operative agreement included a schedule of fees that set forth the then-applicable AUM Fee percentages.

13. In addition to the AUM fee, Raskob Kambourian also charged its CFPA clients a separate fee for financial planning services ("FP Fee"). While the FP Fee was nominally a flat fee (rather than a percentage), it also depended on each client's assets under management. Every operative CFPA included a schedule of fees that set forth the then-applicable FP Fees.

14. Raskob Kambourian generated, on a monthly basis, a Billing Summary for its clients, which set forth the calculations that ostensibly supported the fees that Raskob Kambourian charged to a particular client in a particular month. The fees reflected in the Billing Summary were debited from the client's custodial account at the beginning of each month.

15. As a general practice, Raskob Kambourian did not send these Billing Summaries to its clients. Instead, the only account statements that clients received were from third-party, brokerage account custodians who were not affiliated with Raskob Kambourian. These statements merely noted the fee amounts debited as a single line item, with no explanation as to how those amounts were calculated.

16. In May 2019, Raskob Kambourian charged AUM Fees and FP Fees that

were greater than the amounts expressly authorized under the schedules of fees in its clients' respective agreements. For example, a client with AUM of $500,000 or less who had agreed, in 2012, to pay an annualized FP Fee of $1,500 and an annualized AUM Fee of 0.75% of AUM, was, in May 2019, charged an annualized FP Fee of $3,000 and an annualized AUM Fee of 0.95% of AUM.

17. In November 2019, Raskob Kambourian adopted a "tiered" billing system, which increased the AUM Fees paid by clients with more than $1,000,000 of assets under management. As a result, approximately 17 clients were charged AUM Fees at annualized rates that were six to ten basis points higher than the AUM Fees they had been charged a month prior, and approximately four clients were charged at annualized rates that were 15 to 22 basis points higher than the AUM Fees they had been charged a month prior.

18. Raskob Kambourian also increased its AUM Fees and FP Fees on two later occasions, in January 2020 and in April 2021.

19. In all, during the Relevant Period, Raskob Kambourian charged its clients $805,631 more in AUM Fees and $558,882 more in FP Fees than were expressly authorized under the schedules of fees set forth in its clients' respective agreements, resulting in approximately 59 clients being improperly overbilled by Raskob Kambourian.

**B.   Raskob Kambourian's Failure to Comply with the Brochure Rule**

20. Under the Brochure Rule, as an SEC-registered investment adviser from 2010 until October 2023, Raskob Kambourian was required to file an annual amendment to its Brochure, and was further required to deliver, within 120 days of the end of the firm's fiscal year (or within 165 days in 2020), its current Brochure, or a summary of material changes to the Brochure with an offer to deliver the full Brochure, to all of its advisory clients. The purpose of the Brochure Rule, as adopted in 1979 and amended in 2010, is to ensure that new, prospective, and existing clients of investment advisers receive clearly written, meaningful, and current disclosures of the business practices,

conflicts of interest, advisory services, and fees of the investment adviser.

21. During the relevant period, Raskob Kambourian repeatedly failed to comply with the Brochure Rule.

22. As one example, after filing its annual amendment with updated schedules of fees and related summary of material changes to its Brochure in March 2019, Raskob Kambourian was further required to deliver the Brochure or a summary of material changes with an offer to deliver the full Brochure to each of its clients by April 30, 2019. Raskob Kambourian failed to do so and thus violated the Brochure Rule as of May 2019.

23. Then, in May 2020, and again in March 2021, Raskob Kambourian filed its annual amendments with updated schedules of fees, but failed to comply with the Brochure Rule's requirement that it disclose these revisions in a summary of material changes and then timely deliver either the Brochure or the summary of material changes to all of its advisory clients.

24. In March 2022, after being examined by the SEC, Raskob Kambourian finally disclosed in its summary of material changes that it had "made changes to the brochure over the years, including changes to the Firm's fees that it charges." Raskob Kambourian did not, however, deliver the 2022 Brochure to its clients until July 25, 2022, again in violation of the Brochure Rule.

25. Since Raskob Kambourian did not deliver monthly Billing Summaries to its clients, and since their custodial account statements did not explain how Raskob Kambourian's fees were calculated, compliance with the Brochure Rule was important to Raskob Kambourian's advisory clients. Raskob Kambourian's delivery of a summary of material changes or revised Brochure which disclosed fee increases was a regulatory safeguard that would have enabled clients to learn of the firm's fee increases during the Relevant Period, yet Raskob Kambourian repeatedly violated the Brochure Rule.

C. **Raskob Kambourian's Failure to Keep Books and Records**

26. The Books and Records Rule required Raskob Kambourian to keep true, accurate, and current books and records relating to its investment advisory business for a

1  minimum of five years, and to provide those records to the SEC upon request.

2   27.  Raskob Kambourian failed to maintain and produce books and records required by the Books and Records Rule. In particular, Raskob Kambourian failed to maintain and produce to the SEC, in both 2021 and 2022, copies of all policies and procedures formulated pursuant to the Compliance Rule that were in effect at any time within the prior five years.

**D.  Raskob Kambourian's Failure to Implement Compliance Policies**

28.  The Compliance Rule required Raskob Kambourian to adopt and implement written policies and procedures reasonably designed to prevent violations of the Advisers Act and Rules thereunder, such as policies and procedures designed to ensure compliance with the Brochure Rule and the Books and Records Rule.

29.  Pursuant to Raskob Kambourian's compliance manual, Raskob Kambourian's Chief Compliance Officer was responsible for: (i) ensuring the accuracy and timely filing of Raskob Kambourian's Brochures, as well as for the timely delivery of the Brochures or summaries of material changes to each client pursuant to the Brochure Rule; (ii) implementing and monitoring a system designed to maintain current and accurate versions of the books and records that Raskob Kambourian was required to keep under the Books and Records Rule; (iii) ensuring that Raskob Kambourian's fees were consistent with the Brochure and were accurately calculated in accordance with each client's agreement; and (iv) conducting annual reviews of the adequacy of its policies and procedures.

30.  Raskob Kambourian failed to implement each of these policies, as: (i) it failed to timely deliver its Brochures or summaries of material changes to its clients from 2019 to 2022; (ii) it failed to maintain copies of all policies and procedures formulated pursuant to the Compliance Rule that were in effect at any time within the prior five years; (iii) it imposed fees that were greater than the amounts expressly authorized under the schedules of fees in its clients' respective agreements from 2019 to 2022; and (iv) its CCO failed to conduct annual reviews of the adequacy of its policies and procedures.

### E. Raskob Kambourian's Breach of its Fiduciary Duties

31. During the Relevant Period, Raskob Kambourian was a registered investment adviser.

32. As an investment adviser, Raskob Kambourian owed its clients a fiduciary duty. An investment adviser's fiduciary duty under the Advisers Act comprises both a duty of care and a duty of loyalty. Under its duty of care, an investment adviser must provide investment advice in the best interest of its client, based on the client's objectives. Under its duty of loyalty, an investment adviser must eliminate or make full and fair disclosure of all conflicts of interest which might incline an investment adviser – consciously or unconsciously – to render advice which is not disinterested. Further, the duty of loyalty includes an affirmative duty of utmost good faith, full and fair disclosure of all material facts, and an affirmative obligation to employ reasonable care to avoid misleading clients. Raskob Kambourian breached its fiduciary duty by failing to fully and fairly disclose the fee increases described above to its advisory clients.

33. The fee increases that Raskob Kambourian failed to properly disclose were material and important to its advisory clients because they would have accurately revealed how much clients were being charged for the investment advisory services they received from Raskob Kambourian.

34. A reasonable investor would have considered it important when deciding whether to remain a client of Raskob Kambourian's to know that Raskob Kambourian was increasing its FP Fees and AUM Fees.

35. Raskob Kambourian knew the fee increases were important information to its advisory clients, having acknowledged in its March 2019 and March 2022 Brochures that its revisions to the fee schedules represented material changes to the Brochures.

### F. Raskob Kambourian Acted Negligently

36. Raskob Kambourian failed to act with the level of care that a reasonable investment adviser would have under the same circumstances and was thus negligent when it failed to properly disclose to its clients that it was charging higher FP Fees and

1  AUM Fees than were allowed in their respective CFPAs and IMAs.

2    37. A reasonable SEC-registered investment adviser would have advised its
3  clients of such revisions to its fee schedules.

4  **G. The Applicable Statute of Limitations Has Been Tolled**

5    38. On March 18, 2024, Raskob Kambourian executed a sixty-day tolling
6  agreement, tolling the applicable five-year statute of limitations, *see* 28 U.S.C. § 2462, to
7  June 30, 2024.

8    39. On June 7, 2024, Raskob Kambourian entered into a second tolling
9  agreement to extend the limitations period by another 90 days, through September 28,
10 2024.

## FIRST CLAIM FOR RELIEF

### Violations of Section 206(2) of the Advisers Act

13   40. The SEC realleges and incorporates by reference paragraphs 1 through 39
14 above.

15   41. Defendant Raskob Kambourian, acting as an investment advisor, breached
16 its fiduciary duty by failing to properly disclose to its clients that it was charging higher
17 fees than the clients had agreed to in their advisory agreements.

18   42. Raskob Kambourian negligently, as an investment adviser, directly or
19 indirectly, using the mails or means or instrumentalities of interstate commerce, engaged
20 in transactions, practices, or courses of business which operated or would operate as a
21 fraud or deceit upon any client or prospective client.

22   43. By engaging in the conduct described above, Raskob Kambourian has
23 violated, and unless retrained and enjoined, is reasonably likely to continue to violate,
24 Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

## SECOND CLAIM FOR RELIEF

### Violations of Section 204(a) of the Advisers Act and Rule 204-2 thereunder

27   44. The SEC realleges and incorporates by reference paragraphs 1 through 39
28 above.

45. Defendant Raskob Kambourian, acting as an investment adviser, directly or indirectly, using the mails or means or instrumentalities of interstate commerce, failed to make and keep true, accurate, and current books and records related to its investment advisory business, specifically, copies of all policies and procedures formulated pursuant to the Compliance Rule that were in effect at any time within the prior five years.

46. By engaging in this conduct, Raskob Kambourian, directly or indirectly violated and, unless restrained and enjoined, is reasonably likely to continue to violate Section 204(a) of the Advisers Act [15 U.S.C. § 80b-4] and Rule 204-2 thereunder [17 C.F.R. § 275.204-2].

## THIRD CLAIM FOR RELIEF

**Violations of Section 204(a) of the Advisers Act and Rule 204-3 thereunder**

47. The SEC realleges and incorporates by reference paragraphs 1 through 39 above.

48. Defendant Raskob Kambourian, acting as an investment adviser, directly or indirectly, using the mails or means or instrumentalities of interstate commerce, following any material changes to its Brochure, failed to timely deliver to each client its current Brochure or summary of material changes with an offer to provide its current Brochure.

49. By engaging in this conduct, Raskob Kambourian, directly or indirectly violated and, unless restrained and enjoined, is reasonably likely to continue to violate Section 204(a) of the Advisers Act [15 U.S.C. § 80b-4] and Rule 204-3 thereunder [17 C.F.R. § 275.204-3].

## FOURTH CLAIM FOR RELIEF

**Violations of Section 206(4) of the Advisers Act and Rule 206(4)-7 thereunder**

50. The SEC realleges and incorporates by reference paragraphs 1 through 39 above.

51. Defendant Raskob Kambourian, directly or indirectly, using the mails or means or instrumentalities of interstate commerce, engaged in acts, practices, or courses

of business which were fraudulent, deceptive, or manipulative by providing investment advice to clients and failing to adopt and implement written compliance policies and procedures reasonably designed to avoid misleading its clients and to make full and fair disclosure of all material facts, as required by the Advisers Act and the rules that the SEC has adopted under the Advisers Act.

52. By engaging in the conduct described above, Defendant Raskob Kambourian has violated, and unless restrained and enjoined, is reasonably likely to continue to violate Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-7 thereunder [17 C.F.R. § 275.206(4)-7].

**PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court:

**I.**

Issue findings of fact and conclusions of law that Defendant committed the alleged violations.

**II.**

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendant, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)], Section 204(a) of the Advisers Act [15 U.S.C. § 80b-4] and Rule 204-2 thereunder [17 C.F.R. § 275.204-2], Section 204(a) of the Advisers Act [15 U.S.C. § 80b-4] and Rule 204-3 thereunder [17 C.F.R. § 275.204-3], and Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-7 thereunder [17 C.F.R. § 275.206(4)-7].

**III.**

Order Defendant to disgorge all funds received from its illegal conduct, together with prejudgment interest thereon under Sections 21(d)(5) and 21(d)(7) of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)].

**IV.**

Order Defendant to pay civil penalties under Section 209(e) of the Advisers Act [15 U.S.C. §80b-9(e)].

**V.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**VI.**

Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  September 5, 2024

/s/ Daniel S. Lim
Daniel S. Lim
Robert C. Stillwell
Attorneys for Plaintiff
Securities and Exchange Commission